UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD LEE LLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-1935 (JCH) |
| ) | |
| CITY OF ST. CHARLES, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

The matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 17), filed February 21, 2008. The matter is fully briefed and ready for disposition.

Plaintiff began working for the City of St. Charles Police Department ("Department") on April 1, 1986. (Am. Compl., Doc. No. 14 at ¶ 9). In 1993, the Department promoted Plaintiff to detective. (Id.). This promotion came with additional privileges, including the use of a take home car, a cell phone, a one thousand dollar clothing allowance, and the opportunity to earn overtime pay. (Id. at ¶ 10). In August 2005, the Department promoted Plaintiff to detective sergeant of crimes against property. (Id. at ¶ 9).

Since becoming a detective, Plaintiff has coached the football team at the local high school because his work schedule as a detective allowed him to be available in the afternoon. (Id.). The Department encouraged Plaintiff to coach the football team because of its public relations benefit. (Id. at ¶ 11). In 2006, the high school promoted Plaintiff to head coach of the freshman football team. (Id. at ¶ 10).

In 2001, Plaintiff participated in the successful city council campaign of John Gieseke. (Id. at ¶ 12). In 2004, Plaintiff participated in Gieseke's successful reelection campaign. (Id.). In both campaigns, Plaintiff found locations for campaign signs and placed them at these locations. (Id.). In 2007, Gieseke ran against Defendant Patty York ("York"), the incumbent mayor, for mayor of St. Charles, Missouri ("St. Charles") in a "very contentious" election. (Id.). As in previous elections, Plaintiff aided Gieseke's campaign by finding sign locations and placing the signs at these locations. (Id.). York was aware of Plaintiff's connection with Gieseke. (Id.). York also knew that Plaintiff had participated in a police investigation into allegations of election fraud. (Id.). York's father was one of the people under investigation. (Id.).

On June 11, 2007, Defendant Dennis Corley ("Corley"), the police chief, sent out an email posting seniority bidding for new assignments. (Id. at ¶ 13). In his bid, Plaintiff listed the afternoon shift as his lowest preference. (Id. at ¶ 14). According to seniority rights, Plaintiff should have received the position of his choice. (Id.). On June 15, 2007, Corley notified Plaintiff that "he had been directed" by York to assign him to the afternoon shift as a road sergeant. (Id. at ¶ 15). Corley told Plaintiff that the demotion was not performance related. (Id.). This assignment caused him to lose his detective status and prevented him from coaching football. (Id. at ¶ 16).

Plaintiff filed a grievance, and Corley denied it on June 29, 2007. (Id. at ¶ 18). On July 2, 2007, Plaintiff cancelled his coaching contract with the high school. (Id. at ¶ 19). On August 31, 2007, Plaintiff met with Defendant Lynn Sgouros ("Sgouros"), the Director of Human Resources for St. Charles, to appeal his grievance. (Id.). Sgouros denied his appeal on October 10, 2007. (Id. at ¶ 20). On October 15, 2007, Plaintiff appealed this denial to the St. Charles city administrator. (Id. at ¶ 21). On October 24, 2007, Sgouros informed Plaintiff that St. Charles no longer had a city administrator, that she was designated to handle the appeal, and that it was denied. (Id.).

On October 8, 2007, Corley informed Plaintiff that St. Charles was conducting an investigation into his work hours. (Id. at ¶ 22). Specifically, St. Charles wanted to examine whether his duties as a football and swimming coach at the high school between 2005-2007 had interfered with his police duties. (Id.).

Plaintiff filed this 42 U.S.C. § 1983 action on November 16, 2007 naming St. Charles, York, Corley, and Sgouros as defendants.[1] (Compl., Doc. No. 1). In his Amended Complaint, Plaintiff alleges that Defendants violated his First, Fifth, and Fourteenth Amendment rights. (Am. Compl., Doc. No. 14 at p. 7). He also alleges, without elaborating, that this "action arises under . . . 42 U.S.C. Section[ ] . . . 1985(3)." (Id. at ¶ 1). On February 21, 2008, Defendants filed their motion to dismiss asserting that Plaintiffs claims must be dismissed in part.

## **MOTION TO DISMISS STANDARDS**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. ---, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 1965.

---

[1]He named York, Corley, and Sgouros in both their individual and official capacities. (Am. Compl. at ¶¶ 6-8).

**DISCUSSION**

I. **Plaintiff's § 1983 First Amendment Retaliation Claim**

As previously stated, Plaintiff alleges that Defendants violated § 1983 by retaliating against him for exercising his First Amendment rights. Specifically, Plaintiff alleges that his investigation into York's father and his campaigning for Gieseke were protected by his free speech and association rights. (Am. Compl. at ¶ 25). Defendants contend that his investigation into York 's father was not protected speech due to the Supreme Court's recent decision in Garcetti v. Ceballos, 547 U.S. 410 (2006). In response, Plaintiff presents the novel argument that his investigation invoked his association rights, meaning Garcetti does not apply.

A. **Was the Investigation Protected Speech?**

A public employer, such as a police department, may not discharge an employee "on a basis that infringes that employee's constitutionally protected interest in freedom of speech." McGee v. Pub. Water Supply, 471 F.3d 918, 919 (8th Cir. 2006) (quoting Rankin v. McPherson, 483 U.S. 378, 383 (1987)). Axiomatically, one of the required elements of a First Amendment retaliation claim is that the employee be engaged in protected conduct. Littrell v. City of Kansas City, 459 F.3d 918, 922 (8th Cir. 2006). A public employee's speech is protected only in certain circumstances. First, an employee must be speaking as a citizen on a matter of public concern. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). If the employee's speech does not meet this requirement, then no First Amendment cause of action arises.[2] Bradley v. James, 479 F.3d 536, 538 (8th Cir. 2007). The Supreme Court recently held that whether or not a public employee spoke as a citizen is determined by whether or not the speech was "pursuant to [his] official duties." Garcetti, 547 U.S. at 421. The

---

[2]If the speech does meet these requirements, then a First Amendment claim is possible, and the Court must determine whether the government employer had an adequate justification for treating the employee differently from other members of the general public. See Pickering, 391 U.S. at 568.

Supreme Court, however, did not provide a comprehensive framework for determining the scope of an employee's duties. Id. at 421-25. It merely instructed that the inquiry is a practical one focusing on the duties that the employee is actually expected to perform, rather than his formal job description. Id.

Upon consideration, Plaintiff cannot state a First Amendment retaliation claim based on his investigation of York's father. In his Amended Complaint, Plaintiff admits that his investigation into York's father was "part of [his] official duties." (Am. Compl. at ¶ 12). A police officer investigating a crime, and the speech related to the investigation, is unquestionably an official duty. See Bradley, 479 F.3d at 537-38 (holding that campus police officer who accused his superior officer of being intoxicated at work, did not speak as a citizen because he made the accusations during the course of an official investigation with which he had to cooperate).

### B. Was the Investigation a Protected Association?

Plaintiff also contends that the investigation of York's father invoked his right to freedom of association because he had the right to be associated with the investigation of York's father. Defendants contend that Garcetti's requirements are not confined to speech rights.

Although the Eighth Circuit has not addressed this novel issue, the Eleventh Circuit has. It recently held that Garcetti applies to "public employees who argue that they were terminated for exercise of their right to free association." D'Angelo v. Sch. Bd. of Polk County, 497 F.3d 1203, 1212 (11th Cir. 2007). D'Angelo interpreted Garcetti as requiring the public employee to "have engaged in associational activity as *citizens* to be protected under the First Amendment." Id. (emphasis in original). The Western District of Pennsylvania addressed this issue and came to the same conclusion. Cindrich v. Fisher, 512 F. Supp. 2d 396, 404 (W.D. Pa. 2007).

Upon consideration, the Court finds that Plaintiff cannot state a claim based on his right to association. Plaintiff admits that his association with the investigation of York's father was pursuant to his duties a police officer. As such, he cannot state a claim that he was acting as a private citizen. Accordingly, Plaintiff's § 1983 retaliation claim is dismissed to the extent that it relies on his association with the investigation into York's father.

## II.     Plaintiff's § 1985(3) Claim

In his Amended Complaint, Plaintiff states that this action "arises under" § 1985(3). His Amended Complaint contains no other specific allegations relating to this claim. Defendant asserts that this claim must be dismissed because he has pleaded no specific facts to support his claim. In Response, Plaintiff lists various facts that he believes support his § 1985(3) claim. (Resp., Doc. No. 19 at p. 4-5).

Section 1985(3) proscribes both public and private conspiracies to a deprive person of his constitutionally protected civil rights. Griffin v. Breckenridge, 403 U.S. 88, 91 (1971). In order to make a viable claim under § 1985(3), a plaintiff must allege (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive him, either directly or indirectly, of his civil rights; (3) that a conspirator did act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to the person or property or the deprivation of a civil right. Mettler v. Whitledge, 165 F.3d 1197, 1206 (8th Cir. 1999). To satisfy the conspiracy element, conclusory allegations will not suffice. Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992). Plaintiff must plead specific facts that show a "meeting of the minds" among the alleged conspirators. Id.; see also City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) (holding "the plaintiff must allege with particularity ... that the defendants reached an agreement.").

Upon consideration, the Court finds that Plaintiff has alleged not enough facts to state a § 1983 claim. For example, Plaintiff never specifically alleges that Defendants conspired with each other or what the purpose of the conspiracy was. Failing to allege such facts means that this claim must be dismissed. See Snelling, 972 F.2d at 200.[3]

### III. Plaintiff's Fifth Amendment Claim

Plaintiff has alleged that Defendants violated his Fifth Amendment Rights. Defendants contend that this claim must be dismissed because the Fifth Amendment only applies to the federal government. Defendants are correct because a plaintiff cannot state a claim for a Fifth Amendment violation against a state or municipal government. See Henderson v. Municipality of Cool Valley, 17 F. Supp. 2d 1044, 1047 (E.D. Mo. 1998) (citing Warren v. Gov't Nat'l Mortgage Assoc., 611 F.2d 1229, 1232 (8th Cir. 1980); see also Brockell v. Norton, 688 F.2d 588, 590 n. 4 (8th Cir. 1982). Because the federal government is not a defendant, this claim is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED**.

Dated this 11th day of March, 2008.

                                             /s/ Jean C. Hamilton
                                             UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that this order does not foreclose Plaintiff from filing a more carefully crafted complaint that does state the facts supporting a § 1985(3) claim.