UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD LEE LLOYD, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:07CV01935 JCH |
| | ) |
| CITY OF ST. CHARLES, et al., | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon Defendants' Motion for Summary Judgment. (Doc. No. 40). This matter has been fully briefed and is ready for disposition.

**BACKGROUND**

A. Parties

Plaintiff Ronald Lee Lloyd ("Plaintiff" or "Lloyd") has been an employee of the police department of the City of St. Charles, Missouri since 1986. (Defendants' Statement of Uncontroverted Material Facts ("SUMF"), Doc. No. 42, ¶ 6).[1] Plaintiff was assigned to the Detective Bureau in 1993. (SUMF, ¶ 7). In 2002, Plaintiff became a Sergeant. (SUMF, ¶ 8). On August 12, 2007, Plaintiff was reassigned as a Sergeant in the Patrol Division. (SUMF, ¶ 9).

---

[1] Plaintiff filed a Response to Defendants' Statement of Uncontroverted Material Facts. Plaintiff, however, does not dispute the majority of the facts put forth by Defendants, but Plaintiff instead objects to many of the facts because he claims that the Declarations of Defendants Corley and York are not admissible for purposes of summary judgment pursuant to 28 U.S.C. §1746. The Court finds that Corley's and York's Declarations are admissible because they were signed in the presence of a notary. Moreover, Defendants Corley and York have also re-executed these declarations under penalty of perjury pursuant to 28 U.S.C. §1746. See Doc. Nos. 50-2, 51-2. Accordingly, this Court relies heavily on Defendants' largely undisputed version of the facts in this case. See also Defendants' Reply to Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment, Doc. No. 53 (identifying those facts that are undisputed).

Defendant City of St. Charles is a city governed by an elected Mayor. (SUMF, ¶¶ 1, 4). St. Charles City Mayor Patricia York ("York") has been the Mayor of St. Charles since 1999 and most recently won re-election in April 2007. (SUMF, ¶ 5). Mayor York appointed defendant Dennis Corley ("Corley") as Interim Police Chief in May 2007, and he was named St. Charles City Police Chief in November 2007. (SUMF, ¶¶ 31-32).

B. Complaint

In his Complaint, Plaintiff alleges that Defendants the City of St. Charles, York, and Corley retaliated against him for exercising his First Amendment rights when he supported John Gieseke ("Gieseke") for mayor during the 2007 mayoral election. (Defendants' Memorandum in Support of Their Motion for Summary Judgment ("Memorandum in Support"), Doc. No. 41, p. 1). Plaintiff alleges that the retaliation took the form of transferring him to the second shift and investigating Plaintiff's use of work hours. (Memorandum in Support, pp. 1-2).

C. Background

During her 2007 campaign for Mayor, York communicated with the St. Charles Police Officers Association, which complained of long-standing problems of favoritism and lack of opportunities for advancement in the police department. (SUMF, ¶¶ 10-12). Mayor York pledged to change these problems if re-elected. (SUMF, ¶ 13). Some officers blamed the problems in the police department on then Police Chief Tim Swope, a close friend of Plaintiff. (SUMF, ¶¶ 15-17, 20). Swope resigned in April 2007, shortly after York won the mayoral election. (SUMF, ¶ 30).

D. Transfer

In the summer of 2007, Corley changed the method of assigning officers from the prior practice of assignment by type of crime (i.e., separating property crimes and crimes against persons) to assigning officers based upon geographic area. (SUMF, ¶ 36). This assignment change was

designed to expand opportunities for all police officers. (SUMF, ¶ 40).[2] Corley reassigned the City's fourteen Sergeants to various positions. (SUMF, ¶ 48). Three of the fourteen Sergeants, including Plaintiff, Lieutenant Mark Ehrhard ("Ehrhard") and Sergeant Dave Senter, all received their last choice for shift assignments. (SUMF, ¶ 50).[3] Ehrhard was transferred out of the Detective Bureau to be the Supervisor for Platoon B, the second shift. (SUMF, ¶ 51). Corley assigned Plaintiff as a Sergeant on Platoon B, the second shift Patrol Unit. (SUMF, ¶¶ 9, 54, 55).

Corley made the decision to transfer Plaintiff to the second shift of the Patrol Unit based upon a number of factors. (SUMF, ¶ 56). Corley wanted to improve morale and demonstrate that preferential treatment that existed under the previous chief would not continue. (SUMF, ¶ 58).[4] Corley also wanted to afford other officers experience in the detective bureau and effectuate the reassignment by geographic division. (SUMF, ¶ 59). Also, Corley believed that assigning Plaintiff to the patrol work and the second shift would be beneficial for Plaintiff because it would provide Plaintiff with a busy shift, an opportunity for a wide variety of police work, and more exposure to other officers in the department. (SUMF, ¶¶ 60-61). Corley has attested that, at the time he made the decision to reassign Plaintiff, he did not know that Plaintiff had supported Gieseke in the 2007 mayoral campaign. (SUMF, ¶ 63).

---

[2] Under the prior system, officers assigned to a particular position stayed in that position for extended periods of time, which denied other officers an opportunity to work in those positions and created a sense of entitlement by officers who held those positions. (SUMF, ¶ 39).

[3] Corley had asked officers to rank their preferences for assignment, even though Corley was under no obligation to consider this information. (SUMF, ¶¶ 45-46).

[4] During the 2004 mayoral election race, Plaintiff, then president of the St. Charles Police Officers Association, lead an effort to have the St. Charles Police Officers Association endorse Councilman Rory Riddler for mayor. (SUMF, ¶¶ 21-22). Other members of the Police Officers Association wanted to support York in the election. (SUMF, ¶24). This divided support for Mayor in the Police Officers Association resulted in factions and Plaintiff even filed a grievance against, and requested an investigation, of another member. (SUMF, ¶¶ 25-29). This divide in the Police Department affected department morale. (SUMF, ¶ 29).

E. Investigation

In the summer of 2007, Plaintiff's subordinate officers informally complained to Corley that Plaintiff was not working a full shift and was coaching football at St. Charles West High School while on duty. (SUMF, ¶ 71). After a formal complaint in the fall of 2007, Corley was required to investigate Plaintiff. (SUMF, ¶¶ 72-73). Although the investigation revealed that Plaintiff was coaching football while on duty, no disciplinary action was taken against Plaintiff. (SUMF, ¶¶ 74-76; Memorandum in Support, pp. 2-3).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

To establish a First Amendment retaliation claim, a plaintiff must prove that he engaged in protected activity and that this activity was a substantial or material factor in his employer's decision to take an adverse employment action. Altonen v. City of Minneapolis, 487 F.3d 554, 559 (8th Cir. 2007) (citing Hughes v. Stottlemyre, 454 F.3d 791, 796 (8th Cir. 2006)).[5] If the plaintiff makes this showing, the burden shifts to the employer to demonstrate that it would have taken the same action regardless of plaintiff's First Amendment activities. Id.

The parties do not dispute that the speech at issue was protected speech on a matter of public concern. Plaintiff's participation in mayoral election activities is protected under the First Amendment. Burson v. Freeman, 504 U.S. 191, 196, 112 S. Ct. 1846, 1849-50 (1995). The parties disagree regarding whether Plaintiff suffered an adverse employment action as a result of his speech and whether Plaintiff was retaliated against for his speech.

I.   Adverse Employment Action

    A.   Internal Investigation

Plaintiff alleges that the internal investigation into whether Plaintiff was coaching football at St. Charles High School was undertaken in retaliation for Plaintiff's support of Gieseke in the 2007 mayoral race. The parties agree that Plaintiff was not disciplined as a result of the investigation.

---

[5] See also Okruhlik v. Univ. of Ark., 395 F.3d 872, 878 (8th Cir. 2005) (noting the same test applies to both First Amendment and Title VII retaliation cases).

The Eighth Circuit has held that "[i]nternal investigations into employee complaints are not adverse employment actions when they do not result in any change in [the] form or condition to the employee's employment." Altonen, 487 F.3d at 560 (citing Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir. 2002)); see also Stubbs v. Ford Motor Co., No. 05-0923, 2008 U.S. Dist. LEXIS 25459, at *24 (W.D. Mo. Mar. 31, 2008) (no evidence of retaliation because plaintiff's negative performance reviews did not lead to a material change in plaintiff's employment status). Other federal courts have held the same. Ward v. State Dep't of Pub. Safety, No. 3:06CV01936, 2009 U.S. Dist. LEXIS 3756, at *18-19 (D. Conn. Jan. 21, 2009) ("An investigation or a finding of 'sustained' ... that does not result in discipline does not constitute an adverse employment action.") (citing Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001)); Rattigan v. Gonzales, 503 F. Supp. 2d 56, 72-73 (D.D.C. 2007) ("The mere initiation of an investigation into plaintiff's conduct is not an adverse employment action when it has no effect on the plaintiff's employment.") (citation omitted); Carrero v. Robinson, No. 05-cv-02414, 2007 U.S. Dist. LEXIS 40805, at *35 (D. Colo. June 5, 2007) ("it is difficult to see how an investigation itself, with no apparent consequences, can be materially adverse"); Velikonja v. Gonzales, 466 F.3d 122, 124 (D.C. Cir. 2006) (holding investigation of employee was an adverse employment action because plaintiff did not receive promotions during its pendency). As it is undisputed that no disciplinary action arose as a result of the investigation of Plaintiff, the investigation cannot constitute an adverse employment action sufficient to support Plaintiff's retaliation claim. Plaintiff's retaliation claim based on the investigation into his work hours fails as a matter of law. See Jones, 285 F.3d at 714-15 (internal investigation without disciplinary action did not rise to the level of a materially adverse employment action).

B.  Transfer

Plaintiff also alleges that his transfer from the position as a Sergeant for the Detective Bureau to a Sergeant for the second shift in the Patrol Division was an adverse employment action. Defendants claim that Plaintiff's transfer was merely a lateral transfer without loss in status and cannot constitute an adverse employment action as a matter of law. Upon careful examination, this Court agrees with Defendants' analysis.

Courts examine claims of adverse action on a "'case-by-case approach,' examining the unique factors relevant to the situation at hand." Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998) (quoting Jeffries v. Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998). "Although actions short of termination can at times be considered adverse employment decisions, '[n]ot everything that makes an employee unhappy is an actionable adverse decision.'" Altonen, 487 F.3d at 560 (quoting Bechtel v. City of Belton, 250 F.3d 1157, 1162 (8th Cir. 2001)). A challenged employment action is adverse for the purposes of a claim for retaliation if "'a reasonable employee would have found [it] materially adverse.'" McGowan v. City of Eufala, 472 F.3d 736, 742 (10th Cir. 2006)(quoting Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1315 (10th Cir. 2006). Or, according to the Supreme Court, an employer's action is materially adverse if it "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)(quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

At issue here is whether a transfer and loss of associated "benefits" can be considered an adverse employment action. A "purely lateral transfer" does not, by itself, constitute an adverse employment action. Brown v. Brody, 199 F.3d 446, 455-57 (D.C. Cir. 1999) (citations omitted). "'A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions.'" Shockency v. Ramsey County, 493 F.3d 941, 948 (8th Cir. 2007) (quoting

Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000)). A "'transfer involving only minor changes in working conditions and no reduction in pay or benefits will not constitute an adverse employment action.'" Spears v. Missouri Dep't of Corr. & Human Res., 210 F.3d 850, 853-54 (8th Cir. 2000) (quoting Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)); Champion v. Hudson Mem'l Nursing Home, No. 05-CV-1008, 2007 U.S. Dist. LEXIS 77776, at *9 (W.D. Ark. Jan. 23, 2007).

Courts have held that routine reassignments are not adverse employment actions. Roney v. Ill. DOT, 474 F.3d 455, 461 (7th Cir. 2007) (finding resident engineer's reassignment to inspect painting work was a routine practice and not an adverse employment action); McGowan, 472 F.3d at 742-43 (failure to reassign employee to the day shift was not an adverse employment action); Jones v. District of Columbia Dep't of Corr., 429 F.3d 276, 280-81 (D.C. Cir. 2005) (routine shift change or routine reassignment cannot be deemed an adverse employment action). When a transfer involves the loss of prestige or responsibilities, courts are split as to whether such transfers to be adverse employment actions. See Mickelson, 460 F.3d at 1316 (denial of part time status is an adverse employment action because it caused plaintiff to lose pay and benefits); Shockency, 493 F.3d at 949 (sufficient allegations of retaliation where plaintiff was demoted from commanding an entire patrol division to a desk position without overtime pay, supervisory responsibilities and a take home vehicle); Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 209-10 (2d Cir. 2006) (holding that a transfer was materially adverse, despite no change in job title, because it caused the employee to lose most of his managerial assignments and job responsibilities); Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (adverse employment action occurred where plaintiff's duties were drastically reduced, his personnel file was "papered" with negative reports, his evaluations were drastically lowered, and he was required to participate in special remedial training); but see

Ledergerber, 122 F.3d at 1143-45 (the loss of status and prestige that accompanied replacement of a supervisor's staff, when her salary and position remained the same, did not constitute a sufficient adverse employment action); Tipler v. Douglas County, No. 8:04CV470, 2006 U.S. Dist. LEXIS 31061, at *30 (D. Neb. May 11, 2006) ("[L]oss of status and prestige alone do not rise to the level of an adverse employment action").

With these standards in mind, the Court holds that Plaintiff's transfer to a Sergeant in the Patrol Division was not an adverse employment action. As demonstrated by the following analysis, Plaintiff failed to present evidence of adverse treatment sufficient to survive summary judgment on this basis.

    1.    Prestige

Plaintiff alleges that his previous position with the Detective Bureau[6] was more prestigious than a position in the Patrol Division, even though Plaintiff experienced no change in his rank of Sergeant. (Plaintiff's Legal Memorandum of Law in Opposition to Defendant's [sic] Motion for Summary Judgment ("Memorandum in Opposition"), Doc. No. 46, p. 13). Plaintiff complains that the Major Case Squad afforded him the "prestige and ability to participate in major criminal investigation." (Plaintiff's Reply to Defendant's Response to Plaintiff's Motion in Opposition ("Surreply"), Doc. No. 54, p. 3).[7] Plaintiff, however, cites no authority to support his claim that his transfer was a demotion other than his own belief. See Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998) ("Conclusory affidavits, standing alone, cannot create a genuine issue of

---

[6] Plaintiff refers to the Major Case Squad, which this Court assumes is synonymous with the Detective Bureau.

[7] As noted by Defendants in their Motion to Strike Plaintiff's Surreply (Doc. No. 55), Plaintiffs improperly filed the Surreply without seeking leave of this Court. Plaintiff later sought leave to file his Surreply (Doc. No. 56), which was granted by this Court on January 26, 2009.

material fact precluding summary judgment."). Defendants provide evidence that all detectives in the St. Charles Police Department are offered the opportunity to be on the Major Case Squad, it is not a "special assignment," and no additional pay or benefits are associated being a member. (Defendants' Reply in Support of Their Motion for Summary Judgment ("Reply"), Doc. No. 52, p. 6, n. 5). Rather, it appears that Plaintiff is merely dissatisfied with his lateral transfer, which Corley had the right to implement.[8] See also Duffy v. McPhillips, 276 F.3d 988, 992 (8th Cir. 2002) (plaintiff's dissatisfaction with his work responsibilities did not rise to the level of a material change in employment when his pay, benefits and title remained the same). The Court finds that Plaintiff has failed to offer evidence which would allow a reasonable jury to conclude that he was demoted by his transfer to the Patrol Division.

2.  Loss of Cellular Telephone, Take Home Care and Clothing Allowance

Plaintiff claims that the loss of his employer's cellular telephone, a take home car and $1,000 clothing allowance also constitute adverse employment actions. (Memorandum in Opposition, p. 13). Plaintiff, however, did not need the cellular telephone, take home car[9] and clothing allowance for his duties at the second shift of the Patrol Division. The loss of these "benefits" merely correlated to the change in his job duties due to his reassignment and cannot constitute a adverse employment action. The Court will not second guess the decision not to provide Plaintiff with these items upon his transfer. Enowmbitang v. Seagate Tech., 148 F.3d 970, 973 (8th Cir. 1998) (decision whether to give the employees specific pieces of equipment is a business decision that is not susceptible to

---

[8] Corley had the right to laterally transfer Plaintiff to a duty assignment at any time. (Reply, pp. 3-4).

[9] Plaintiff claims that the City's car was available for his use "at any time while on or off duty." (Memorandum in Opposition, p. 15). In fact, according to the City of St. Charles Code of Ordinances §34.06, use of the vehicle for personal business was prohibited. (Reply, pp. 4-5).

judicial oversight). Further, the loss of these items is too trivial to amount to an adverse employment action. See Place v. Abbott Labs., 215 F.3d 803, 810 (7th Cir. 2000) (loss of company telephone insufficient); O'Neal v. City of Chicago, 392 F.3d 909, 912-14 (7th Cir. 2004) (loss of work-provided cellular telephone, pager, vehicle insufficient); Herrnreiter v. Chi. Hous. Auth., 315 F.3d 742, 747 (7th Cir. 2002) (losing employer's car and the freedom of an investigator not materially adverse employment action); Foraker v. Apollo Group, Inc., 427 F. Supp. 2d 936, 942 (D. Ariz. 2006) (loss of a company cell phone does not constitute adverse employment action). Plaintiff's complaints regarding the loss of his employer's cellular phone, vehicle and his clothing allowance do not constitute adverse employment actions.

        3.        Overtime Hours and Promotion

Plaintiff also claims that he has experienced a decrease in overtime hours, which constitutes an adverse employment action. (Memorandum in Opposition, pp. 14-15).[10] If there was support for this assertion, then it may be sufficient to state prima facie case of an adverse employment action. Veliz v. City of Minneapolis, No. 07-2376, 2008 U.S. Dist. LEXIS 51070, at *17-18, n. 7 (D. Minn. July 2, 2008) (City conceded that the position for which plaintiff applied included a greater opportunity for overtime, which was sufficient to render the denial of the plaintiff's application for that position an adverse employment action); Harris v. Potter, No. 4:06 CV 700, 2007 U.S. Dist. LEXIS 75404, at *14 (E.D. Mo. Oct. 10, 2007)("The denial of overtime hours can constitute an adverse employment action."); Tatroe v. Cobb County, Ga., No. 1:04-CV-1074, 2006 U.S. Dist. LEXIS 66462, at *23 (N.D. Ga. Mar. 7, 2006) ("Denials of the opportunity to work overtime generally are deemed adverse employment actions, since they directly affect an employee's

---

[10] Plaintiff estimates that he has made $5,600 less in overtime pay in 2008, in comparison to 2006, as a result of his transfer. (Memorandum in Opposition, p. 15).

compensation."). Defendants, however, assert that Plaintiff was offered additional overtime hours but that Plaintiff has declined such overtime. (Reply, p. 4). In support of his claim, Plaintiff provides his pay records for 2006 through 2007. (Doc. No. 46-29). Plaintiff's pay records do not refute Defendants' claim that Plaintiff was offered additional overtime, which he refused. Furthermore, Defendants note that another officer, who ranked lower than Plaintiff, earned an annualized salary in excess of $100,000 by taking advantage of similar overtime opportunities. (Reply, p. 4, n. 3). Plaintiff has failed to dispute Defendants' evidence that Plaintiff was offered additional overtime hours. Plaintiff cannot claim an adverse employment action because of loss of overtime hours when he has failed to take advantage of opportunities for overtime when they were made available. See Pitchford v. Potter, 72 Fed. Appx. 506, 507, No. 03-1282, 2003 U.S. App. LEXIS 16140, at *2 (8th Cir. Aug. 7, 2003) ("reduction of hours did not constitute an adverse employment action, given that he had refused offers of other work that would have provided him with the same number of hours"). Therefore, Plaintiff has failed to show that his purported loss of overtime hours constitutes an adverse employment action.

Plaintiff also claimed that he lost the opportunity for a possible promotion. (Memorandum in Opposition, pp. 13-14).[11] Plaintiff does not provide any support for this claim. (Id.) Defendants note that Plaintiff put in for a promotion in January 2008, but that he later voluntarily withdrew his name from consideration. (Reply, p. 6). Thus, there is no evidence that Plaintiff was pursuing a promotion or incurred an adverse employment action as a result of his transfer.

    4.       Football Coaching

---

[11] Plaintiff does not elaborate on his lost benefit of "possible promotion." (Memorandum in Opposition, p. 15).

Plaintiff also argues that he lost $3,990.00 in income because his schedule change to the second shift made him unable to coach football at St. Charles High School. (Memorandum in Opposition, p. 15). Plaintiff cites to no law to support his position that the loss of outside employment due to a schedule change can be considered an adverse employment action. This Court does not consider the loss of secondary employment, which is outside the control or domain of the employer and not "job related," to be an adverse employment action. See Fallon v. Meissner, 66 Fed. Appx. 348, 352, No. 02-1823, 2003 U.S. App. LEXIS 8277, at *10-11 (3d Cir. Apr. 30, 2003) (transfer that increased employee's commute was not a "materially adverse employment action" because it arose from the employee's individual preferences was not "job-related" in the appropriate sense); Grube v. Lau Indus. Inc., 257 F.3d 723, 728 (7th Cir. 2001) (altered work hours not adverse employment action where request to change from 1st to 2nd shift because of family situation denied).

5.  Conclusion

This Court cannot hold that Plaintiff's transfer constitutes an adverse employment action. As in Reilly v. Dallas County Sheriff's Dep't, this Court holds that the minor differences between Plaintiff's employment as a Sergeant in the Detective Bureau and his reassignment as a Sergeant in the Patrol Division do not constitute a materially adverse employment action:

> The evidence before the Court shows that Reilly's transfer was not a demotion, but a lateral transfer. Reilly remained in the same division of the [Dallas County Sheriff's Department], retained the same rank of Deputy Sheriff, and did not suffer a decrease in salary or benefits. The only evidence of any alleged negative consequence arising from the transfer was the reduction in the number of overtime hours that Reilly worked (from 268 to 101 hours), not having the use of a County vehicle for purposes of driving to and from work, and Reilly's perception that his duties in the Court Services Section are "monotonous" and "less interesting" than those in the Fugitive Section. The Court finds that these changes do not constitute "materially adverse consequences" in the terms and conditions of Reilly's employment.

Reilly v. Dallas County Sheriff's Dep't, No. 3:00-CV-0546, 2001 U.S. Dist. LEXIS 12427, at *30 (N.D. Tex. Aug. 15, 2001) (holding that plaintiff did not show an adverse employment action for

purposes of his retaliation claim). Plaintiff's transfer involved no reduction in pay or rank and no more than a minor change in working conditions. Under these circumstances, the Court believes that Plaintiff's transfer did not constitute an adverse employment action as a matter of law and Defendants' Motion for Summary Judgment is granted.

II.     Causal Connection

In addition to the above reasons, the Court also believes that Plaintiff has failed to state a prima facie case for retaliation because he has failed to demonstrate that his transfer was motivated by a retaliatory motive. To prove a causal connection, a plaintiff must prove an employer's retaliatory motive played a part in the adverse employment action. Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. Mo. 2006) (citing Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 896-97 (8th Cir. 2002)). "[E]vidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to prove a causal connection." Kipp, 280 F.3d at 897 (internal citation omitted). Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006)(quoting Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996)) (plaintiff must prove "'a desire to retaliate was the actual motivating factor behind the transfer'").

   A.     Investigation

Initially, Plaintiff has failed to establish a causal connection between the internal investigation and his support for Gieseke. In the fall of 2007, a few of Plaintiff's subordinate officers formally complained about Plaintiff's dereliction of his work hours. (Memorandum in Support, p. 8). Defendants have put forth evidence that, after Corley received the formal complaint about Plaintiff's work hours, Corley was obligated to initiate an investigation against Plaintiff. (Memorandum in Support, p. 8). Plaintiff cannot dispute this legitimate, non-retaliatory reason for the investigation. The evidence is also that Corley, not York, ordered the investigation. (Memorandum in Support, p.

8; Reply, pp. 7-8). Plaintiff has not raised any facts to support his claim the investigation was motivated by Plaintiff's support of Gieseke.

B.  Transfer

Plaintiff argues that York made the decision to transfer Plaintiff in retaliation for Plaintiff's support of York's opponent, Gieseke, in the 2007 mayoral election. The undisputed evidence, however, supports a finding that Corley made the decision to transfer Plaintiff, and that Corley was unaware of Lloyd's support for Gieseke for Mayor in 2007. (Reply, p. 8). The undisputed evidence also shows that Plaintiff's transfer was implemented for reasons unrelated to Plaintiff's support of Gieseke in the mayoral election in 2007. In other words, Defendants have presented evidence that Plaintiff would have been transferred even if he had not supported Gieseke. Cf. Hughes, 454 F.3d at 799 (plaintiff made a prima facie showing of retaliation in violation of his First Amendment Rights where there was no evidence the plaintiff would have been demoted and transferred but for the complaints).

First, Plaintiff admits that he has no direct evidence that York or Corley knew that Plaintiff took part in Gieseke's campaign for Mayor. (Reply, p. 7). Absent any direct evidence, Plaintiff must provide circumstantial evidence that Defendants were motivated by retaliation when they ordered the transfer and investigation of Plaintiff. "Evidence that gives rise to an 'inference of retaliatory motive' is sufficient to prove a causal link between the speech and the adverse action." Altonen, 487 F.3d at 560-561 (quoting Kipp, 280 F.3d at 897). "If that showing is made, the burden shifts to the defendant to demonstrate the employer would have taken the same action regardless of the protected conduct." Id.

Corley has attested that he didn't know that Plaintiff supported Gieseke at the time he decided to transfer Plaintiff, and Plaintiff has not disputed this. This destroys the causal connection between

the transfer by Corley and the alleged retaliatory motive. Harris v. Surrey Vacation Resorts, Inc., No. 06-3334, 2008 U.S. Dist. LEXIS 56331, at *26 (W.D. Mo. July 24, 2008) (quoting Smith v. Riceland Foods, Inc., 151 F.3d 813 (8th Cir. 1998) ("[A] causal link between statutorily protected activity and an adverse employment action does not exist if the employer is not aware of the employee's statutorily protected activity.") (internal citation omitted).

Given that Corley was unaware of Plaintiff's alleged support for York, Plaintiff tries to prove that York knew Plaintiff supported Gieseke and York ordered Corley to transfer Plaintiff. In support of his claim that York knew Plaintiff supported Gieseke, Plaintiff references various events that occurred in 2004. Specifically, Plaintiff claims that York saw Plaintiff holding Gieseke's child at a rally in 2004.[12] Plaintiff also claims that York was aware that Plaintiff supported Gieseke during Gieseke's 2004 campaign for city council--not Gieseke's 2007 campaign for Mayor. (Reply, p. 8). Plaintiff also refers to posts on www.stchuckwatch.com that were made in 2004, and was allegedly viewed by York. (Reply, p. 9).[13] Plaintiff's claimed causal connection between events that occurred in 2004 and the purported retaliation in 2007 is not well-founded. See Grey v. City of Oak Grove, 396 F.3d 1031, 1035 (8th Cir. 2005)(a time gap between the protected activity and the adverse employment action weakens the inference of retaliation); Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1046 (8th Cir. 2007) (any alleged retaliatory actions in January 2005 were too far removed in time from the filing of plaintiff's December 2002 EEOC complaint to establish a causal

---

[12]Interestingly, Defendants note that York's daughter used to babysit Lloyd's children. (Reply, p. 8, n. 8).

[13]Plaintiff has failed to provide any evidence to support his claim that information regarding the transfers in 2007 was also posted on www.stchuckwatch.com. (Memorandum in Opposition, p. 5; Reply, p. 9).

connection). Plaintiff cannot demonstrate that the retaliatory act (the transfer) was based upon events that occurred primarily in 2004.

Plaintiff also tries to demonstrate that York ordered Plaintiff's transfer. Plaintiff alleges that Corley told him that York ordered his transfer. (Memorandum in Opposition, p. 6). Captain McCarrick stated that during his meeting with Plaintiff and Corley, Plaintiff stated to Corley that he believed the transfer was York's, not Corley's idea, and Corley nodded his head.[14] Captain McCarrick, however, admitted that he may have misunderstood Corley's actions. (Reply, p. 7, n. 7). Furthermore, Captain McCarrick testified that he did not know if Plaintiff's friendship with Gieseke was the reason for Plaintiff's transfer. (Plaintiff's Exhibit 5, Doc. No. 46-6). Thus, Plaintiff's sole basis for this belief is Plaintiff's interpretations of Corley's non-verbal actions. (Reply, p. 7). Plaintiff's speculation is insufficient to overcome the evidence that Corley, not York, ordered Plaintiff's transfer.

Further, the transfer of two other officers, Juengst and Ehrhard also supports a finding that Plaintiff's transfer was not based upon a retaliatory motive. Both Juengst and Ehrhard testified that they did not support either Gieseke or York in the race for Mayor. (Reply, p. 10, n. 10, 11). Given that two officers, who did not support Gieseke, were transferred in 2007 from their positions, the evidence does not support Plaintiff's argument that his transfer was in retaliation for his support for Gieseke. (Memorandum in Support, p. 10); see Hughes, 506 F.3d at 679 (affirming district court's grant of summary judgment in favor of defendant where there was no evidence whatsoever indicating similarly situated individuals were treated differently).

---

[14] Plaintiff cites to his Grievance to Captain McCarrick as support for his claim that Corley admitted that York ordered his transfer. (Memorandum in Opposition, p. 6). Plaintiff's self-serving statements in his own Grievance do not create an issue of material fact.

Thus, Plaintiff has failed to identify a causal connection between his speech and his transfer. Plaintiff has the burden to demonstrate a causal connection between his protected speech and the adverse employment action of reassignment as part of establishing his prima facie case. Hughes, 454 F.3d at 796-97. This Court concludes that Plaintiff did not present sufficient evidence to create an inference of retaliatory motive and failed to establish a prima facie case. See Altonen, 487 F.3d at 561 (plaintiff failed to meet her burden because the evidence she presented did not support an inference that she was reassigned because of a retaliatory motive).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 40) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Declaration of Mayor Patricia York (Doc. No. 47) and Plaintiff's Motion to Strike Defendant's Declaration of Chief of Police Dennis Corley (Doc. No. 48) are **DENIED**.

Dated this 26th day of February, 2009.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE